## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **Heather Lamkin** | **Plaintiff** |
| v. | No. 3:18-cv-834-BJB-RSE |
| **Southern States Cooperative, Inc.** *et al.* | **Defendants** |

| | |
|---|---|
| **Southern States Cooperative, Inc.** | **Third-Party Plaintiff** |
| v. | |
| **Sisters of Charity of Nazareth, Inc.** | **Third-Party Defendant** |

\*\*\*

## Opinion & Order

     A bag of rock salt crashed through the back window of the pickup truck Plaintiff Heather Lamkin was driving on an errand for her employer. The bag struck Lamkin in the back of the head, sending her to the emergency room and eventually, as she describes it, into pre-term labor. Lamkin sued Southern States Cooperative—the company that sold and loaded the rock salt—for negligence. But the law of negligence generally assigns drivers (like Lamkin), rather than retailers (like Southern States), the duty of securing cargo in a vehicle—at least if the retailer doesn't affirmatively assume that responsibility. Because Southern States never took on that duty here, Lamkin cannot make out a claim for negligence. The Court therefore grants Southern States' motion for summary judgment.

## Summary Judgment Record

     Heather Lamkin worked for the Sisters of Charity of Nazareth in Nazareth, Kentucky. Sisters often tasked her with running errands and picking up or dropping off items. In January 2018, Sisters sent her to Southern States in Springfield, Kentucky—about 25 minutes away—to pick up a 2,500 lb. order of rock salt. Complaint (DN 1-1) ¶ 5; Motion for Summary Judgment (DN 40-1), Exhibit 1 (Lamkin Deposition at 63:14–19, 68:14–16). She drove a pickup owned by Sisters. That day was cold and damp, and Lamkin was eight months' pregnant. Lamkin Response (DN 41) at 1. After she paid for the salt with the Sisters credit card, a Southern States employee told her to wait outside in her vehicle for an employee to load her truck. Lamkin Dep. at 63:19–24.

A forklift operated by Southern States soon loaded a pallet of rock salt into the back of Lamkin's truck. *Id.* at 64:1–2. The forklift operator noticed a leak in one bag in the pallet and "did not want to short" the Sisters. *Id.* at 73:6–7. So he threw an extra bag on top of the pallet in the truck bed. Complaint ¶ 7. Lamkin did not inspect her truck bed before leaving; she asked the employee "am I good to go?" Lamkin Dep. at 64:6–7; 73:18–20. He said "yes," and Lamkin drove off without further checking the load. *Id.* at 73:18-20.

During the drive from Springfield to Nazareth, the pallet slid toward the front of the wet truck bed. The loose bag on top of the pallet broke through the back window of the truck and struck Lamkin in the head. *Id.* at 64:15–18; Complaint ¶ 9. Lamkin visited the emergency room for treatment. Response at 3. And within a few days, she went into pre-term labor. *Id.*

### This Lawsuit

Lamkin, a Kentucky resident, brought this suit alleging that Southern States' negligence caused her injuries and resulting damages. Southern States, a Virginia-based company, removed the case to federal court, invoking this Court's diversity jurisdiction. *See* Notice of Removal (DN 1); 28 U.S.C. §§ 1332, 1441. Southern States then filed a third-party indemnity complaint against Sisters, alleging that Sisters' negligence—not Southern States'—caused any injury to Lamkin. *See* DN 38. After the parties completed discovery, Southern States moved for summary judgment (DN 40).

The pleading and briefing in this case do not address what, if any, compensation Lamkin sought or received from her employer. At argument, counsel informed the Court that Lamkin has filed, and soon expects to finalize, a workers' compensation claim addressing partial disability associated with this incident. Hearing Transcript (DN 56) at 5:6–15. Counsel agreed that the existence and potential resolution of the workers' compensation claim did not affect the ripeness of the summary judgment motion pending before this Court. *Id.* at 6: 16–7:9.

### Summary Judgment Standard

Summary judgment is appropriate if the movant, Southern States, shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts are limited to the record evidence the parties identified in their motion papers, *see* Fed. R. Civ. P. 56(c), and that evidence is viewed in the light most favorable to Lamkin, the non-moving party, *see Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

Because Lamkin bears the burden of proving negligence, Southern States may establish its right to summary judgment by pointing to "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To survive Southern States' motion, therefore, Lamkin must identify evidence in the record that creates a genuine issue of material fact that a jury would need to resolve at trial.

**Negligence in Loading and Securing Cargo**

Lamkin's lawsuit asserts a single claim for negligence: that Southern States breached its duty to exercise ordinary care when it failed to secure the salt it loaded in the back of her truck.[1] Complaint at ¶ 7. Proving a negligence claim requires "the existence of a duty, breach of that duty, causation between the breach of duty and the plaintiff's injury and damages." *Hayes v. D.C.I. Properties-D Ky, LLC*, 563 S.W.3d 619, 622 (Ky. 2018). Lamkin and Southern States both apply Kentucky's law of negligence to this dispute. *See, e.g.*, *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 Fed. App'x 563, 571 (6th Cir. 2016) (applying Kentucky law to tort claims because "at least some of the allegedly tortious conduct took place" in the Commonwealth).

Both Southern States and Lamkin train their arguments on the first element of negligence: duty. Whether a duty exists between a defendant and plaintiff presents a question of law for courts to decide, not a question of fact for the jury. *See Shelton v. Ky. Easter Seals Soc'y*, 413 S.W.3d 901, 912 (Ky. 2013); *Martin v. Cincinnati Gas and Elec.*, 561 F.3d 439, 444 (6th Cir. 2009) ("Duty presents a question of law for the judge to decide.") (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003)).

Lamkin contends that Southern States assumed the duty to secure the rock salt by undertaking to load her truck. Southern States, however, points to caselaw in the shipper and common-carrier context indicating that shippers of goods (or their sellers, by analogy) bear no duty, under the law of Kentucky and other jurisdictions, to secure goods in a customer's vehicle.[2] *See* Motion at 7–12; Response at 3–9; Reply (DN 43) at 3–8.

### A. *The law governing shippers and common carriers does not control.*

Though analogous, the law governing shippers and common carriers does not directly apply here because Lamkin isn't a common carrier. Courts in Kentucky (and elsewhere) have long defined a "common carrier" as "one who undertakes, for hire or reward, to transport the goods of all such as choose to employ him." *Robertson v. Kennedy*, 32 Ky. 430, 431 (Ky. Ct. App. 1834); *see also Comm'rs of the Sinking Fund v. Our Own Deliveries, Inc.*, 382 S.W.2d 878, 880 (Ky. Ct. App. 1964) (same). The common law has for hundreds of years recognized that common carriers

---

[1] For the first time at argument, Lamkin's counsel articulated an alternative theory of fault and injury that challenged Southern States' decision to load the pallet onto Lamkin's truck bed because the wintry conditions might've made that unsafe and contributed to the bag later sliding through her window. Hearing Transcript at 14:8–21. But Lamkin offers no support in any caselaw or testimony for the notion of ascribing negligence to simply loading the pallet *at all*—in a truck that Lamkin and Sisters supplied for this specific load on this specific day, no less. Given the lack of record evidence cited in the papers and argument suggesting this act could support a liability verdict, Lamkin's "conclusory allegations and perfunctory statements, unaccompanied by citations or some effort at legal argument" aren't enough to use this newly asserted theory to avoid summary judgment. *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). In addition, because Lamkin hasn't offered the "minimal level of argumentation" to preserve this argument, the Court considers it forfeited in any event. *Id.*

[2] Southern States also argues that it owed no duty to Lamkin under Kentucky's premises-liability law. Motion at 5–7. Lamkin apparently agrees—or at least asserts no claim on this basis.

bear heightened duties of care in the transport of people and goods. *See, e.g.*, Robert J. Kaczorowski, *The Common-Law Background of Nineteenth-Century Tort Law*, 51 Ohio St. L.J. 1127 (1990) (discussing the law of common carriers).

The most fundamental of these is a stringent duty "to transport and deliver safely." *Bank of Ky. v. Adams Express Co.*, 93 U.S. 174, 181 (1876). Courts understand safe transport and delivery to encompass duties related to the loading *and* securing of goods. *See Rector v. General Motors Corp.*, 963 F.2d 144, 146 (6th Cir. 1992) (discussing duties to load and unload) (quoting 13 Am. Jur. 2d Carriers § 319 (1964)); *United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445–46 (4th Cir. 1953) (discussing common carrier's duty to safely transport, which includes securing cargo). A carrier is generally "liable for damages resulting from [the] failure to perform" those duties "in a proper matter." *Rector*, 963 F.2d at 146; *Savage Truck Line, Inc.*, 209 F.2d at 445–46.

But these heightened duties imposed by "the law applicable to common carriers … ought not to be extended to persons who have not expressly assumed that character." *Senters v. Ratliff's Adm'r*, 128 S.W.2d 724, 725 (Ky. Ct. App. 1939). Neither Southern States nor Lamkin, of course, are common carriers. Lamkin was driving a truck in the course of her employment, but she ran errands only for Sisters—not the public at large. *See Robertson*, 32 Ky. at 431; *Comm'rs of the Sinking Fund*, 382 S.W.2d at 880. Therefore, the Court will not hold either party to a common carrier's "peculiarly rigorous" standard. *Senters*, 128 S.W.2d at 725.

### B. Southern States never undertook to secure the rock salt in the back of Lamkin's truck.

In Kentucky, "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Shelton v. Ky. Easter Seals Soc'y*, 413 S.W.3d 901, 908 (Ky. 2013) (citation omitted). Even where no affirmative duty to act applies, "a duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefor" under the "assumption of duty" doctrine. *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 696 (W.D. Ky. 2019) (alterations adopted) (quoting *Bray v. Dick*, No. 2012-CA-1958-MR, 2015 WL 510882, at *8 (Ky. Ct. App. Feb. 6, 2015)). "A threshold inquiry" under this assumption-of-duty doctrine "is whether the putative tortfeasor has *actually and specifically* undertaken to render the services allegedly performed without reasonable care." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005) (emphasis added).

In many ordinary contexts, a driver bears the responsibility to secure items transported in her truck. *See* KRS § 189.150(2) ("No vehicle shall be operated upon any public highway for a distance of over one (1) mile whose load is susceptible to shifting or spillage unless said load is covered with a device suitable for prevention of spillage."); 60A C.J.S. Motor Vehicles § 804 (June 2021 update) ("Ordinarily, the operator of the vehicle has the duty to know whether articles are projecting or in danger of falling from the vehicle.") (footnotes omitted). Lamkin and Southern States do not dispute this baseline principle. Instead, at argument plaintiff's counsel attempted to distinguish this dispute from the "run-of-the mill case" where a retailer helps load groceries into a customer's vehicle—when, presumably, the parties agree that a retailer would *not* owe a customer a duty to properly secure goods in a vehicle. *See* Transcript at 17:20–19:10.

A retailer, however, might affirmatively undertake such an obligation—whether by supplying the materials and personnel responsible for securing cargo, exercising exclusive control over vehicles in a loading area, or some other means of positively assuming this duty. *Cf. Grand Aerie*, 169 S.W.3d at 847 ("knowledge that the undertaking serves to reduce the risk of harm to another or circumstances that would lead a reasonable person to the same conclusion is a prerequisite for an undertaking ...") (citing Restatement (Third) of Torts § 42 cmt. d (Proposed Final Draft No. 1, 2005)). And Lamkin contends that Southern States did in fact assume the responsibility to secure the rock salt in the back of the pickup before Lamkin drove off Southern States' lot. *See* Response at 3–5. Lamkin's theory, however, never explains (or supports with record evidence) how exactly Southern States "*actually and specifically*" undertook to secure the load. *See Grand Aerie*, 169 S.W.3d at 847.

Nor would the facts before the Court support a conclusion that Southern States did in fact do anything to assume that duty (or even say anything, assuming for the sake of argument words alone could suffice, Restatement (Second) of Torts, § 323 cmt. d (leaving "open the question whether a mere promise, without in any way entering upon performance, is undertaking sufficient to make the promisor liable" under an assumption of duty theory)).[3] Telling Lamkin where to park, Lamkin Dep. at 63:19–24, conveyed nothing about securing her load. Southern States' employee using the forklift to lift the pallet into the truck, *id.* at 64:1–2, addressed loading, rather than securing. And the loading caused no injury—though Southern States correctly recognizes that it *did* bear a duty of care with respect to the loading, based on its exclusive control of that process. No Southern States employee told Lamkin that the cargo was safe or that she could not or should not secure it. *See id.* at 64:6–7. Because Southern States never affirmatively undertook responsibility for securing the cargo for the drive back to Nazareth, therefore, under general assumption-of-duty principles it never owed Lamkin a duty of care to ensure the goods were safely secured. *See Grand Aerie*, 169 S.W.3d at 847.

Somewhat surprisingly, Kentucky caselaw does not appear to address the precise question of when and how a retailer may undertake a duty to secure goods in a customer's vehicle. Indeed, Lamkin acknowledges "that the particular facts giving rise to this action are unique and without precedent." Response at 5. And Southern States happily enough agrees that no Kentucky caselaw supports Lamkin's position that a party loading goods owes a duty to protect the buyer or shipper from damages caused by the failure to secure those goods. Motion at 11 ("Plaintiff's theory … is simply not supported under Kentucky law."). Thus, "our role is a predictive one":

> When considering a first impression question of Kentucky law on appeal, we must attempt to predict how the Kentucky Supreme Court would decide the issue. Sources that may guide the court's determination include "the decisions (or dicta) of the Kentucky Supreme Court in analogous cases, pronouncements from other Kentucky courts, restatements of law, commentaries, and decisions from other jurisdictions."

---

[3] According to another court within this District "it appears that Kentucky has adopted § 323 … of the Second Restatement of Torts." *Ky. Laborers Dist. Council Health & Welfare Tr. Fund*, 24 F. Supp.2d 755, 774 (W.D. Ky. 1998).

*Hicks v. State Farm Fire and Cas. Co.*, 751 F. App'x 703, 708 (6th Cir. 2018) (citations omitted) (quoting *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015)). The parties and the Court thus look to these other legal authorities to determine whether, under our best application of existing Kentucky authorities to a new context, Southern States assumed a duty to safely secure the salt it helped Lamkin load into her truck. *See Baily v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985) (citing 19 Fed. Prac. & Proc. Juris. § 4507 (2d ed. 1982)).

To the extent judicial precedent helps the Court examine the summary judgment record here, the best guidance available arises from decisions in other jurisdictions. And the most closely analogous caselaw cuts in Southern States' favor: a retailer undertaking to help a customer load goods into a vehicle doesn't take on the driver's default responsibility to secure them—at least not solely by the act of loading or helping to load.

Sears, for example, was not liable for the failure to secure a table saw in the back of a customer's truck: Sears loaded the saw at the store, the customer later stumbled and grabbed the saw when moving it, and customer and saw both tumbled out of the truck bed. *Adams v. Sears Roebuck & Co.*, 2014 WL 670630, at *1 (D. Utah 2014). Despite its role in helping the customer load the saw into his truck, "Sears did not undertake the task of securing the saw." *Id.* at *4. The Court drew a critical distinction between two steps in the process, reasoning that "the loading and securing of the saw," under the law of negligence as applied to retailers and customers, "were separate tasks." *Id*.

Several state courts have respected the same division of responsibility. The Washington Court of Appeals distinguished between loading and securing a load, holding that a lumberyard had no duty to secure goods it helped load into a customer's truck. *See Ganno v. Lanoga Corp.*, 80 P.3d 180, 184 (Wash. Ct. App. 2003). The Utah Court of Appeals also distinguished between loading and securing a load, though in the driver's favor. There, several people helped the defendant load his truck for a move across town. *Ottens v. McNeil*, 239 P.3d 308, 318 (Utah Ct. App. 2010). But after a chair fell out of the truck on the highway and caused an accident, only the person who secured the load was held liable. "One who undertakes to *secure a load*," the court held, "has a direct duty not to do so negligently." *Id.* at 317–18 (emphasis added). The Oklahoma Court of Civil Appeals similarly applied this distinction in the driver's favor when a furniture company undertook to "unload the chairs and then, reload, arrange and tie-down boxes of furniture in the bed of [the driver's] pick-up truck, after which they were to then load, and secure the chairs on top of the furniture." *McClure v. Sunshine Furniture*, 283 P.3d 323, 329 (Okla. Civ. App. 2012).

The Court remains unaware of any decision pointing in the opposite direction, and the parties have not identified any authorities that would assign liability to the store in this situation.

The line between loading articles and securing them, moreover, is grounded in common sense and common conceptions of property and control. Southern States was in control of the parking lot, the loading equipment, and the rock salt, and therefore arguably best situated to guard against unreasonable risks and injuries at that stage. But once the cargo was in Lamkin's truck bed, she was in control of the space, material, and any safety measures. Lamkin has not identified anything in the record indicating that Southern States requested, exercised, or necessarily assumed

control over the interior of her truck bed. Whether a truck bed was occupied by other material, or dirty, or equipped with straps and a cover are all factors within the control of the driver, not the store. And they are entirely independent of whether a store helps load material into the truck in the first place. The disincentives created by extending the store's duty from its lot to the truck bed are easy to see. As the *Adams* court observed, holding otherwise would "discourage companies" from "adopt[ing] policies or procedures benefiting their customers." *Adams*, 2014 WL 670630, at *6. Southern States raised this concern about the consequences of Lamkin's proposed rule for future conduct and cases, *see* Motion at 6–7, yet Lamkin has offered no mitigating rule or limiting principle. Respecting this distinction between loading and securing allows retailers to help customers load goods without necessarily assuming the separate responsibility to secure the load.[4]

According to Lamkin's opposition (at pp. 5–9), even if she were treated as a common carrier, this case would fall within an exception to this rule of carrier liability: because Southern States, as the shipper, exercised "exclusive control over loading the cargo," meaning Southern States should bear liability. *See Rector*, 963 F.2d at 147; *Musial*, 2012 WL 3629012, at *3 (same). The duty should rest with the loader, according to Lamkin, because she wasn't "in a position to know the manner in which the cargo … had been loaded." *Rector*, 963 F.2d at 147.

Regardless of the distinction between loading and securing cargo, however, Lamkin cannot point to evidence indicating Southern States maintained exclusive control over the loading of the cargo in her own truck. Despite Lamkin's assertion that "[s]he was not … given the opportunity to inspect the load behind her," Response at 8, nothing in the record shows that Lamkin was in any

---

[4] This approach is consistent with the rule applied by the Sixth Circuit and Kentucky Court of Appeals in the common-carrier context. The Sixth Circuit has interpreted Kentucky law to impose a "general rule" that "the carrier has the primary duty to load and unload goods." *Rector v. General Motors Corp.*, 963 F.2d 144, 146 (6th Cir. 1992). Therefore the carrier (*i.e.*, the driver), not the shipper (*i.e.*, the seller), "is liable for damages resulting from [the] failure to perform that duty"—loading and unloading—"in a proper matter." *Id.* (quoting 13 Am. Jur. 2d Carriers § 319 (1964)). The Kentucky Court of Appeals, citing *Rector* as "most recent statement of Kentucky law on this area of the law," agreed with this statement of carrier liability. *See Musial v. PTC Alliance Corp.*, Nos. 2011–CA–001365 & 2011–CA–001481, 2012 WL 3629012, at *5–6 (Ky. Ct. App. Aug. 24, 2012). Commentators draw the same distinction in the related context of damage *to* rather than *from* cargo hauled by common carriers. *See, e.g.*, 44 A.L.R.2d 993 § 3 (*Liability of carrier by land or air for damage to goods shipped resulting from improper loading*) ("The primary duty as to the safe loading of goods for shipment is held or recognized in many cases as being upon the carrier, which is, of course, liable for its negligence in so doing."); *Duty to Load and Unload Cargo*, 22 Williston on Contracts § 59:25 (4th ed.) ("Responsibility for obviously improper loading generally rests on the common carrier, even though the shipper loaded the truck.").

To be clear, Lamkin's case concerns allegations about negligently securing cargo, rather than negligently loading it. Lamkin sued because she alleges that Southern States should've tied down (or otherwise fastened) the bag of salt, not because she claims Southern States injured her merely by putting it in her truckbed. And as discussed above in Part A, this case concerns an employee transporting goods for a private employer, not a common carrier transporting goods for any member of the public. *See Senters*, 128 S.W.2d at 725. The authorities cited in this footnote therefore do not strictly control. But it remains instructive that Southern States apparently would bear no liability for negligently securing cargo if Lamkin drove a truck for a common carrier, and has offered no reason why Southern States should bear greater exposure for the same action with respect to a commercial employee.

way barred from observing the loading or taking steps to inspect and secure the cargo, *see Rector*, 963 F.2d at 147; *cf. Lobdell v. Masterbrand Cabinets, Inc.*, No. 06-10948, 2008 WL 2224094, at *8 (E.D. Mich. May 29, 2008) (shipper had exclusive control over loading where it barred the driver from entering the docking or loading area)

First, Lamkin came to Southern States, paid for the rock salt, and supplied (through her employer) the vehicle to carry it. Lamkin Dep. at 63:14–21. Second, she did so as the employee of Sisters charged with transporting the cargo that Sisters purchased. *Id.* Third, she discussed the loading with the Southern States employee. *Id.* at 64:2–7. Fourth, no evidence suggests she was unable to inspect, reject, or inquire about the cargo or its loading. To the contrary, the record indicates that she discussed the extra bag with the Southern States employee and could see the pallet using the rearview mirror. *Id.* She asked whether she was "good to go?" *Id.* at 64:6–7. And despite his answer in the affirmative, *id.*, he said nothing about whether the goods were secured, and nothing prevented her from checking whether the salt was safely loaded for the trip back to Nazareth. Lamkin readily admitted that she could've left the truck, but did not because of the weather. *See* Response at 1 ("Plaintiff was happy to oblige as she was eight months' pregnant at the time and in no shape to be loading and securing a pallet of rock salt in the damp cold of January.")

True, Southern States alone loaded the rock salt into the back of the truck. But the exception Lamkin claims focuses on exclusive *control* of loading and securing cargo, not merely the fact of loading. *See, e.g.*, *Lobdell*, 2008 WL 2224094, at *8. Otherwise a party that loaded cargo would always undertake liability in this circumstance, and the purported exception would swallow the rule. And as discussed above, property law and common sense tell us that she—rather than Southern States—controlled the truck bed where the rock salt remained unsecured, regardless of who loaded the cargo.

## Conclusion

Because Lamkin presents no evidence that Southern States undertook to secure the rock salt in the back of her truck, Southern States owed her no duty under Kentucky law to do so and therefore is not liable for Lamkin's unfortunate injuries. The Court grants Southern States' motion for summary judgment on this basis. This holding renders unnecessary the Sisters' motion to dismiss (DN 46) Southern States' third-party apportionment complaint against it (DN 38). The Court denies the motion to dismiss as moot because Southern States bears no underlying liability to apportion to Sisters.

Benjamin Beaton, District Judge
United States District Court

July 22, 2021